IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **MISTEA DONALDSON,** *individually and on behalf of the* **ESTATE OF COLLIN DONALDSON,**<br><br>*Plaintiff,*<br><br>v.<br><br>**GEORGIA DEPARTMENT OF CORRECTIONS,** *et al.*,<br><br>*Defendants.* | **CIVIL ACTION NO.**<br>**5:23-cv-00139-TES** |

**ORDER GRANTING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS**

On March 6, 2023, Plaintiff Mistea Donaldson filed this case in the Superior Court of Baldwin County, Georgia, alleging violations of the Georgia Tort Claims Act, the Eighth Amendment, and the Fourteenth Amendment. [Doc. 1-1]. On April 20, 2023, Defendants Jessica Howard and Dasia Mosley—with consent of all other Defendants— removed the case to this Court. [Doc. 1, p. 1].

**BACKGROUND**[1]

This case arises from the suicide of Collin Donaldson ("Donaldson"), an inmate

---

[1] "A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss." *Provident Mut. Life Ins. Co. of Phila. v. City of Atlanta*, 864 F.Supp. 1274, 1278 (N.D. Ga. 1994). When ruling on a 12(b)(6) motion (which contains the same standards as a 12(c) motion), the Court must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

incarcerated at Georgia State Prison ("GSP")—a facility under the control of the Georgia Department of Corrections ("GDC"). [Doc. 1-1, ¶ 22].[2] Plaintiff alleges that before Donaldson's suicide, the named Defendants "knew that [Donaldson] had a history of suicidal behavior and had been diagnosed with mental health conditions including depression and paranoia." [*Id.* at ¶ 23].

Donaldson committed suicide while housed in solitary confinement in the K building at GSP. [*Id.* at ¶ 25]. GDC policy requires correctional officers to observe inmates in solitary confinement every 15 minutes, 24 hours a day. [*Id.* at ¶ 28]. Those observations include "an officer going to each cell, locat[ing] the inmate, and confirm[ing] that the inmate is alive—typically by speaking to the inmate or observing movement or breathing." [*Id.* at ¶ 29]. Additionally, GDC and GSP policy requires six officers to staff the K building. [*Id.* at ¶ 30].

However, on the day of Donaldson's suicide, GSP had no Captain on duty, and only two officers staffed the K building. [*Id.* at ¶ 35]. Indeed, Plaintiff alleges that before Defendant Kerri Carter arrived, "there was no officer at all in K building for some

---

[2] Plaintiff also discusses the "well-documented . . . epidemic level of suicides" in GDC facilities. [Doc. 1-1, ¶ 1]. As outlined in the Complaint, since early 2017, at least 125 inmates committed suicide in GDC facilities. [*Id.* at ¶ 2]. That rate is "approximately double the national average and one of the highest among prison systems in the nation." [*Id.* at ¶ 3].

Specifically, at GSP, in 2019, the prison housed 1,309 inmates—123% of its capacity. [*Id.* at ¶ 12] However, GSP operated at a 31% vacancy rate for correctional officers. [*Id.* at ¶ 10]. Further, a "2019 assessment of [GSP] found that the required mental health status checks of inmates in solitary confinement were widely being copy and pasted." [*Id.* at ¶ 21].

period of time." [*Id.* at ¶ 43]. After arriving, Carter wrote in her logbook that she needed to cover "both Knorth and Ksouth [*sic*]," which meant that she would "be running back and [forth] throughout the day." [*Id.* at ¶ 45]. She also explicitly wrote that she would "not be going in the dorms because [she did] not have a central station officer to keep a visual." [*Id.*].

Ultimately, another inmate discovered that Donaldson committed suicide by tying a sweatshirt to the light fixture in his cell. [*Id.* at ¶ 48]. Neither Carter nor Defendant Dasia Mosley—also assigned to the K building—performed any of the required safety observations between arriving at 7:00 a.m. and learning of Donaldson's suicide around 9:13 a.m. [*Id.* at ¶ 54].

Plaintiff—Collin Donaldson's surviving mother—brought this suit against the Georgia Department of Corrections, correctional officers Kerri Carter and Dasia Mosley, officer-in-charge Jessica Howard, GSP Warden Trevonza Bobbitt, and GDC Commissioner Timothy Ward. [*Id.* at ¶¶ 61–69]. In Count I, Plaintiff claims negligence by Defendant Georgia Department of Corrections pursuant to the Georgia Tort Claims Act. [Doc. 1-1, p. 13].[3] In Count II, Plaintiff claims that Defendants Carter and Mosley violated Donaldson's Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. [Doc. 1-1, p. 14]. In Count III, Plaintiff claims that Defendant Jessica Howard violated Donaldson's Eighth and Fourteenth Amendment rights pursuant to § 1983.

---

[3] Defendant GDC has not moved for judgment on the pleadings as to Count I.

[Doc. 1-1, p. 15]. In Count IV, Plaintiff claims, based upon supervisory liability, that Defendants Howard, Bobbitt, and Ward violated Donaldson's Eighth and Fourteenth Amendment rights pursuant to § 1983. [*Id.*]. After removing the case to this Court, Defendants filed the instant Motion for Judgment on the Pleadings [Doc. 2], arguing that Plaintiff's Complaint fails to state a claim. [Doc. 2, p. 1].

## **LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008) (citing *Cannon v. City of W. Palm Beach*, 150 F.3d 1299, 1301 (11th Cir. 2001)). In determining whether a party is entitled to judgment on the pleadings, district courts "accept the facts in the complaint as true and . . . view[s] them in the light most favorable to the nonmoving party." *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). If a comparison of the averments in the competing pleadings reveals a material dispute of facts, judgment on the pleadings must be denied. *See Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1956).

## DISCUSSION[4]

Section 1983 creates no substantive rights. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Rather, it provides a vehicle through which an individual may seek redress when his federally protected rights have been violated by an individual acting under color of state law. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim for relief under § 1983, a plaintiff must satisfy two elements. First, she must allege that an act or omission deprived her of a right, privilege, or immunity secured by the U.S. Constitution or laws of the United States. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). Second, she must allege that the act or omission was committed by a state actor or a person acting under color of state law. *Id.*

### I.     Direct Liability Claims

The first step in reviewing a direct liability claim under § 1983 is to determine whether Plaintiff has sufficiently alleged a constitutional violation. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291 (11th Cir. 2009). "Without a constitutional violation, there can be no violation of a clearly established right." *Smith v. Siegelman*, 322 F.3d 1290, 1295 (11th Cir. 2003). To establish such a constitutional violation, Plaintiff must establish that the Defendant[s] knew Donaldson possessed a strong likelihood of committing suicide, and

---

[4] Throughout Plaintiff's Complaint and Response, she conflates claims for deliberate indifference to a serious medical need with claims for deliberate indifference to a known risk of suicide. However, "acting with deliberate indifference to a serious medical need **is a separate claim** from acting with deliberate indifference to a known risk of suicide." *Jackson v. West*, 787 F.3d 1345, 1358 (11th Cir. 2015) (emphasis added).

that they were deliberately indifferent[5] to that risk. *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990). To be deliberately indifferent to a "strong likelihood" that the prisoner may commit suicide, "the official must be subjectively aware that the *combination* of the prisoner's suicidal tendencies and the feasibility of suicide in the context of the prisoner's surroundings creates a strong likelihood that the prisoner will commit suicide." *Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008), *see also Cook*, 402 F.3d at 1115 ("in a prison suicide case, deliberate indifference requires that the defendant deliberately disregard *a strong likelihood* rather than a mere possibility that the self-infliction of harm will occur.").

Put another way, "[i]n the context of jail suicides, an allegation of deliberate indifference must be considered in light of the level of knowledge possessed by the officials involved, or that which should have been known as to an inmate's suicidal tendencies." *Popham*, 908 F.2d at 1564. Absent knowledge of a detainee's suicidal tendencies, courts have consistently held that failure to prevent suicide has never been held to constitute deliberate indifference. *Id.*; s*ee also Edwards v. Gilbert*, 867 F.2d 1271, 1275 (11th Cir. 1989) ("In the absence of a previous threat of or an earlier attempt at suicide, we know of no federal court in the nation or any other court within this circuit that has concluded that official conduct in failing to prevent a suicide constitutes

---

[5] Deliberate indifference requires the plaintiff to "show that the defendant had (1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] . . . that risk; (3) by conduct that is more than mere negligence." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005).

6

deliberate indifference.").

Therefore, Plaintiff must first show that Defendant[s] subjectively knew that Donaldson faced a serious risk of harm. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). Second, Plaintiff must show that Defendant[s] failed to respond in an objectively reasonable way. *Id.*

### a. Defendants Carter and Mosley

Defendants Carter and Mosley argue that the Complaint fails to state a claim against them for two reasons. First, Defendants argue the "allegations do not plausibly suggest that Defendants Carter and Mosley were aware of a 'strong likelihood' that [Donaldson] would attempt suicide." [Doc. 2-1, p. 8]. Second, they argue the Complaint's "fact allegations suggest that Defendants Carter and Mosley's wrongdoing amounted to, at most, negligence[.]" [*Id.* at p. 9].[6]

Plaintiff's Complaint provides no factual support to the claim that Carter and Mosley had any subjective knowledge of Donaldson's suicidal tendencies or his status as a high suicide risk. [Doc. 1-1, ¶ 85]. Here, Plaintiff attempts to carry that burden by alleging textbook conclusory facts in the Complaint. [Doc. 1-1, ¶ 23 ("Defendants knew that [Donaldson] had a history of suicidal behavior and had been diagnosed with

---

[6] For their first argument, Defendants seem to rely on Federal Rule of Civil Procedure 9(b). [Doc. 2-1, p. 8 (referencing Rule 9(b)'s pleading requirements for knowledge)]. However, Rule 9(b) "has no application to civil rights actions under [§ 1983]." *McKinley v. Kaplan*, 177 F.3d 1253, 1257 (11th Cir. 1999). Therefore, Plaintiff need only satisfy Rule 8(a)(2)'s requirement of a "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

mental health conditions[.]")]. These facts, however, do not sufficiently allege which Defendants knew of any previous suicide attempts or when those alleged suicide attempts occurred. Those bare-bone assertions fail to show how or "why *these* Defendants in particular . . . would know" of Donaldson's history with mental illness and suicide attempts. *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010). And, giving Plaintiff the benefit of the doubt that Carter and Moseley knew of Donaldson's history, Plaintiff's Complaint nonetheless fails to adequately lay out sufficient facts showing that he exhibited the requisite strong likelihood that he would commit suicide during the specific time in question. *Id.*

First, Plaintiff can't carry her burden if the Court accepts that Carter and Mosley knew that Donaldson suffered from mental illness. "Implicit in *Popham* is a holding that simple knowledge that the detainee fits the profile of a high suicide risk is not enough." *Bowens v. City of Atmore*, 171 F. Supp. 2d 1244, 1254 (S.D. Ala.), *aff'd sub nom. Bowens v. City of Atmore*, 275 F.3d 57 (11th Cir. 2001) (referencing *Popham*, 908 F.2d at 1564; *see also Edwards*, 867 F.2d at 1276.

Likewise, if the Court assumed that Carter and Mosley knew that Donaldson had attempted suicide at some undefined time in the past, knowledge of a prior suicide attempt "without more, is not sufficient to put [Defendants] on notice of a strong likelihood rather than a mere possibility that the self-infliction of harm will occur." *Snow ex rel. Snow v. City of Citronelle, Ala.*, 420 F.3d 1262, 1269 (11th Cir. 2005).

8

Effectively, Plaintiff would have the Court adopt a bright-line rule that says that if any prisoner with a mental illness[7] had ever attempted suicide before, he would certainly do it again and the correctional officers working around him are deemed to know it and are constitutionally responsible if he does. Such a holding would dramatically alter the pleading requirements that the United States Supreme Court set in *Iqbal* and *Twombly*. And, of course, that is not a tack that this Court can take.

Assuming, *arguendo*, that Carter and Mosley knew all of the "facts from which the inference [of Donaldson's risk of suicide] could be drawn," Plaintiff must still show that they took the next step and "[drew] the inference." *Harper*, 592 F.3d at 1234. Plaintiff's Complaint once again lacks such critical and necessary facts.

Additionally, an assertion that a defendant "should have known" of a risk is insufficient to state a deliberate indifference claim. *See Franklin v. Curry*, 738 F.3d 1246, 1249 (11th Cir. 2013) ("The district court erred by finding allegations that they 'knew or should have known' of a substantial risk of serious harm sufficient to state a deliberate indifference claim."). Put another way, "deliberate indifference requires more than constructive knowledge." *Id.* Here, nothing in Plaintiff's complaint shows that Carter or Mosley "***actually knew*** of the serious risk" that Donaldson faced. *Id.*

---

[7] In her complaint, Plaintiff uses the vague and undefined term "mental illness," basically leaving the Court and Defendants to guess what that specific illness may be (aside from general terms like "depression" and "paranoia," which are not specific diagnoses), its severity or its role in the decedent's suicide. *Iqbal*, *Twombly*, and the Federal Rules of Civil Procedure require more.

9

Without subjective knowledge, Defendants' actions are more akin to mere negligence. [Doc. 2-1, p. 9]. As this Court has recognized, negligence does not give rise to a constitutional violation. *Thornton v. Dep't of Corr.*, 5:22-CV-00366-TES-MSH, 2022 WL 17975755 (M.D. Ga. Dec. 28, 2022); *see also Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000) ("Failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence."); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999).

In the end, "the mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." *Cook*, 402 F.3d at 1115. Accordingly, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings as to Count II against Defendants Carter and Mosley.

      **b.**    <u>**Defendant Howard**</u>

Plaintiff also brings a claim against Defendant Jessica Howard based on her personal involvement in the understaffing of GSP. Howard argues that mere knowledge of inadequate staffing, without more, does not create a strong likelihood that suicide will occur, nor does it show that she had a subjective awareness of a strong likelihood of suicide. [Doc. 2-1]. The Court agrees.

Plaintiff has failed to allege how Howard was deliberately indifferent to Donaldson, specifically. First, Plaintiff's Complaint fails to straightforward allege that Defendant Howard acted with deliberate indifference to Donaldson's specific risk of

suicide. Instead, the Complaint broadly asserts that Howard "was deliberately indifferent to the known risk of danger to inmates in K Building[.]" [Doc. 1-1, ¶ 96].

Second, Plaintiff failed to allege how Howard's knowledge about insufficient staffing created a strong likelihood that Donaldson would engage in self-harm on April 10, 2021. Indeed, the Eleventh Circuit has clearly held that Plaintiff "cannot rely on a generalized policy of understaffing" to support a deliberate indifference claim. *McDowell v. Brown*, 392 F.3d 1283, 1291 (11th Cir. 2004). Instead, Plaintiff must show a "deliberate intent to inadequately staff" the prison. *Id.* Here, Plaintiff fails to make any such allegations. Plaintiff's Complaint does allege "gross understaffing" in GDC facilities at large. [Doc. 1-1, ¶ 4]. However, there is no allegation that Defendant Howard has any control over staffing for all of GDC's facilities. Plaintiff needed to clearly connect the dots between Howard's knowledge of GSP's understaffing, her decision not to properly staff the prison, and her awareness that understaffing would lead to an inmate's suicide. *Edwards*, 867 F.3d at 1277. Plaintiff's Complaint fails to include all of the factual pieces of the puzzle, much less describe how all of them fit together to impose constitutional liability on Defendant Howard.

Accordingly, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings for Count III against Defendant Howard.

## II.     Supervisor Liability Claims

To be liable as a supervisor under § 1983, an individual must (1) personally

11

participate in the unconstitutional conduct, or (2) have some causal connection between their acts and the alleged constitutional deprivation. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). For that causal connection, a plaintiff must show that (1) the supervisor was on notice, by history of widespread abuse, of the need to correct a practice and failed to do so, (2) a policy or custom resulted in deliberate indifference, (3) the supervisor directed a subordinate to act unconstitutionally, or (4) the supervisor knew of a subordinate's unlawful conduct and failed to stop it. *Id.* But these deprivations and violations must be "obvious, flagrant, rampant and of continued duration[.]" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).

To carry this burden, Plaintiff argues that the supervisory Defendants "implemented policies or customs that caused the constitutional deprivation; a history of widespread abuse put them on notice of the deficiency and they did not correct it; and they knew that their subordinates would violate the law and did not stop them from doing so." [Doc. 5, p. 14]. Additionally, Plaintiff argued that understaffing was one cause for the "widespread custom" of GDC officers failing to conduct regular safety observations, [Doc. 1-1, ¶ 15] and these safety observations were necessary for the health of inmates in isolation. [Doc. 1-1, ¶ 14][8].

---

[8] Plaintiff alleges that GSP had a 31% officer vacancy rate in 2019, [Doc. 1-1, ¶ 10] and "GDC inmate suicides have been widely attributed to the use of solitary confinement, a well-known cause of mental health issues." [Doc. 1-1, ¶ 13]. Therefore, inmates in "single-inmate solitary confinement must be regularly and frequently observed for safety . . . ." [Doc. 1-1, ¶ 14].

12

First, Plaintiff's allegations that suicides have been widely attributed to solitary confinement, and that understaffing was a cause for the widespread custom of officers failing to conduct regular safety checks, amount to no more than conclusory statements without specific factual support, and therefore fail to establish widespread misconduct. *See Jackson v. Miami-Dade Cnty.*, 18-20665-CIV, 2018 WL 5787247, at *10 (S.D. Fla. Nov. 5, 2018).

As discussed above, to support an understaffing claim, Plaintiff needed to allege facts to show that Defendants understaffed MSP with the "requisite deliberate indifference to its known or obvious consequences." *McDowell*, 392 F.3d at 1289. Put another way, Plaintiff needed to show "that the supervisors were deliberately indifferent to whether understaffing would result in constitutional violations." *West v. Tillman*, No. 04-0100-KD-M, 2006 WL 2052520, at *12 (S.D. Ala. July 21, 2006). Plaintiff failed to present any facts to that effect. Instead, Plaintiff only provided legal conclusions. [Doc. 1-1, ¶ 101(b) ("They promulgated, enforced, and permitted to exist customs and policies that caused Georgia State Prison to be grossly understaffed such that inmates' well-being could not be reasonably assured.")]. That is not enough to carry Plaintiff's pleading burden.

Plaintiff also asserts arguments seemingly related to a failure-to-train claim, but again, Plaintiff fails to lay out facts showing that any Defendant exhibited the required deliberate indifference. Under a failure-to-train claim, a supervisor can be held liable

"only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *City of Canton v. Harris*, 483 U.S. 378, 388 (1989). Therefore, to maintain such a claim, Plaintiff needed to show that Defendants had "actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate . . . rights." *Connick v. Thompson*, 563 U.S. 51 (2011). Plaintiff's Complaint is devoid of such allegations. Even more, Ward, Bobbitt, and Howard cannot be liable for Carter and Mosley's negligent failure to follow their training. *See Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1294 (11th Cir. 2009) (holding that a city was not liable for a misapplication of training or an officer's failure to follow clear policies).

Defendants' counterarguments focus on Plaintiff's lack of specificity within its Complaint. For example, Defendants point to Plaintiff's failure to mention *specific* previous suicides at GSP. [Doc. 2-1, p. 14]. Defendants correctly point to Plaintiff's lack of factual support for her broader allegations concerning GSP.[9] Plaintiff alleged that the Defendants had actual knowledge that GSP was "routinely, grossly" understaffed, officers at GSP lacked training in suicide prevention and intervention, GSP officers

---

[9] Plaintiff attempted to add facts through her Reply. [Doc. 5, p. 16]. But, the Court can only consider facts contained within the pleadings. In order for the Court to have properly considered these additional facts, Plaintiff should have amended her Complaint to add them. *Huls v. Llabona*, 437 F. App'x 830, 832 (11th Cir. 2011) ("Because Huls raised this argument for the first time in his response to Llabona's motion to dismiss, instead of seeking leave to file an amended complaint, pursuant to Fed. R. Civ. P. 15(a), it was not properly raised[.]").

routinely failed to conduct required rounds and safety observations, and GSP overused and abused solitary confinement. [Doc. 1-1, ¶ 100]. But Plaintiff's general allegations without specific factual support cannot suffice to establish widespread constitutional violations. Moreover, Plaintiff has failed to show that GSP's alleged deficiencies caused or were even linked to any *specific* previous suicides. Indeed, Plaintiff only alleges, in conclusory fashion, that "severe understaffing in GDC facilities has contributed to GDC's widespread failure to prevent suicides." [Doc. 1-1, ¶ 4]. However, there is no clear alleged causal connection between the alleged understaffing and any previous inmate suicide.

Defendants also argue that Plaintiff's allegations regarding causation simply parrot the elements of a § 1983 claim. [Doc. 2-1, p. 15]. Plaintiff's Complaint reads that Defendants "had actual knowledge that their subordinates would violate inmates' constitutional rights, including [Donaldson]'s constitutional[10] rights on April 10, 2021, and failed to stop them from doing so." [Doc. 1-1, ¶ 101(d)]. Comparatively, the legal standard for this cause of action is that a supervisor "knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360. Plaintiff's allegation is simply a "[b]are recital[] of the elements of a cause of action, supported by mere conclusory statements," which "do[es] not suffice." *Lapinski v. Leech*,

---

[10] The Defendants (and the Court) are left to guess or assume that Plaintiff is referring to decedent's Eighth Amendment claim of deliberate indifference to suicide risk (as opposed to other constitutional rights). But, the point of *Iqbal* and *Twombly* is to eliminate such sweeping generalities.

15

717 F. App'x 970, 971 (11th Cir. 2018). Indeed, "just because [Defendants'] policies did not prevent [Donaldson's] suicide does not mean that they caused it." *Silcox v. Hunter*, No. 3:16-CV-1509-J-32MCR, 2018 WL 3633251, at *5 (M.D. Fla. July 31, 2018).

Therefore, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings for Counts IV.

### III.     Qualified Immunity[11]

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To claim qualified immunity, a defendant must first show he was performing a discretionary function. *Moreno v. Turner*, 572 F. App'x 852, 855 (11th Cir. 2014). Discretionary functions include those "(1) undertaken pursuant to the performance of [an officer's] duties and (2) within the scope of [the officer's] authority." *Lenz v. Wilburn*, 51 F.3d 1540, 1545 (11th Cir. 1995). "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012)

---

[11] Qualified immunity may be determined at this stage in the case. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) ("Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.").

16

(quoting *Lewis v. City W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)). A plaintiff demonstrates that qualified immunity does not apply by showing "(1) the defendant violated a constitutional right, and (2) [the] right was clearly established at the time of the alleged violation." *Moreno*, 572 F. App'x at 855 (quoting *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009)). The "clearly established" requirement may be met by one of three showings: (1) a materially similar case has already been decided; (2) an accepted general principle should control the novel facts of the case with obvious clarity; or (3) the conduct in question so obviously violated the Constitution that no prior case law is necessary. *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204–05 (11th Cir. 2012).

The first prong of qualified immunity—acting within discretionary authority—is not in dispute. However, the parties do dispute the second element—whether caselaw clearly established the actions in question in this case violated federal law.

In response to Defendants' assertion of qualified immunity, Plaintiff responds that the "Supreme Court established, by 1976 at the latest, that deliberate indifference to serious medical needs violates the Eighth Amendment." [Doc. 5, p. 20]. However, that misses the mark. As discussed *supra* note 4, claims of deliberate indifference to a serious medical need are different from deliberate indifference to a known risk of suicide. Instead, Plaintiff needs to point to caselaw that "establishes a 'bright line' in such a 'concrete and factually defined context' to make it obvious to all reasonable government actors, in the defendant's position, that the actions violate federal law." *Thompson v. City*

*of Birmingham*, 5 F. Supp. 3d 1304, 1314 (N.D. Ala. 2014) (citing *Scarbrough v. Myles*, 245 F.3d 1299, 1301 (11th Cir. 2001)). Indeed, "if caselaw, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997); *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000).

Plaintiff's Response fails to overcome qualified immunity. Plaintiff only mentions two cases regarding the prison-suicide context—neither of which are published, binding opinions of the United States Supreme Court, Georgia Supreme Court, or Eleventh Circuit. *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010). Plaintiff's citations to caselaw relating to other § 1983 claims simply cannot carry her burden of pointing to clearly established law in the prison-suicide context. Therefore, the individual Defendants are entitled to qualified immunity.

## **CONCLUSION**[12]

Based upon the foregoing, the Court **GRANTS** Defendants' Motion for

---

[12] In response to the pending Motion, Plaintiff adds that "[i]f the Court finds that Plaintiff's Complaint is deficient in any respect, Plaintiff requests leave to amend and cure any such deficiency." [Doc. 5, p. 21]. However, that is not how a plaintiff seeks leave to amend her complaint. "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1222 (11th Cir. 1999).

As this Court has previously noted, "[e]ffectively, Plaintiff asks for a 'do-over' in the event of an adverse ruling. This the Court simply cannot do. Plaintiff drafted h[er] complaint, filed it, and chose not to exercise h[er] absolute right to amend h[er] complaint within 21 days after receiving the Defendants' motions to dismiss. Thus, [s]he must now proceed with the complaint as it is written." *Blash v. City of Hawkinsville & Pulaski Cnty., Ga. Sheriff's Office*, 5:17-CV-00380-TES, 2018 WL 3150346, at *11 (M.D. Ga. June 27, 2018).

Judgment on the Pleadings for Counts II–IV. Pursuant to the discretion afforded the Court by 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplementary jurisdiction over Plaintiff's remaining state law claims and **REMANDS** this action to the Superior Court of Baldwin County.[13]

**SO ORDERED**, this 30th day of June, 2023.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[13] "[S]tate courts, not federal courts, should be the final arbiters of state law, and when a federal court has dismissed all federal claims from a case, there is a very strong argument for dismissal, especially where the federal claims are dismissed prior to trial. [D]istrict courts may not exercise jurisdiction absent a statutory basis." *Iraheta v. Houston Cnty.*, 5:21-CV-00104-TES, 2022 WL 209273, at *11 (M.D. Ga. Jan. 24, 2022), appeal dismissed, 22-10628-GG, 2022 WL 1668860 (11th Cir. Apr. 14, 2022) (internal citations omitted).